Thank you, your honor. Good morning, your honors, and may it please the court. Ryan Stitt, federal defenders, on behalf of the appellant Ricardo Lara. There are two issues before the court and the parties agree on much of the facts surrounding Mr. Lara's case. First, both parties agree that the district court's unambiguous oral pronouncement of sentence was to not revoke Mr. Lara's supervision and that the correct remedy is for this to send Mr. Lara's case back to district court for the district court to correct or amend the written judgment to conform to the unambiguous oral pronouncement of sentence. The parties further agree that the district court modified Mr. Lara's terms of supervision to include a 10-month and 23-day period of custody as a condition of supervision and the remaining issue for this court to decide is whether that condition of custody as a term of supervision is lawful. It is not. Ricardo Lara Can I just ask you one thing? I know it seems rather straightforward that the oral pronouncement controls here, but I wonder if the district court couldn't have imposed a term of custody without revoking supervised release, setting aside 35-63-B-10. Why doesn't the fact that the court did impose a term of custody make the oral pronouncement ambiguous regarding revocation? Well, the oral, the transcript of Judge Burns' sentencing in this case is crystal clear. He says, quote, so I'm not going to revoke him, end quote. And he makes that ruling after hearing argument from both parties about whether to revoke Mr. Lara's supervision. Here's from Mr. Lara himself, as well as the probation officer, and then comes to the conclusion that he's not going to revoke supervision. The law in this circuit is clear that an unambiguous oral pronouncement of sentence controls, quote, even if contrary to the district court's intent. That quote is from United States versus Garcia. This court has repeatedly held since United States versus Munoz de la Rosa that an unambiguous oral pronouncement of sentence controls, and the district court's language in this case is crystal clear. As the parties agree, it was the district court's unambiguous ruling that he was, quote, not going to revoke Mr. Lara. Would we be in a different circumstance here if the government, and they're not, was saying let's just undo the whole thing and send it back so the judge could start over? We would be in a different circumstance, your honor. And in this case, because the district court's ruling was clear that it was not revoking supervision, the government would have needed to appeal and then seek, and they haven't. I mean, Judge Smith's question occurred to me too, but it seems to me because the government is not appealing, we're stuck with what unequivocally the district judge said he thought he was doing, which was not revoking. Correct. So tell me why, assuming he didn't revoke, the term of incarceration is not legal. Historically, conditions of custody as a term of supervision have not been permitted by statute. This court in United States v. Baha'i reached that conclusion in 2000, and the law remained unchanged for eight years until 2008 when Congress amended the supervised release conditions and permitted district courts to impose a condition of custody as a term of supervision in limited circumstances. And the condition of custody imposed in Mr. Lara's case violates the statutory restrictions on imposing a condition of custody. Specifically, the cross-references of sections 3583D, E2, and 3563B10 only authorize a district court to impose a condition of custody as a term of supervision within the defendant's first year of supervision. 3563B10 is explicit on this point. Let me just interrupt you for a second because I want to understand your position at this point. Does that mean that the term of incarceration should have ended at the end of his first year of supervision? Absolutely. It was imposed during the first year, correct? That's correct. It was imposed during the first year, but the entire text or the reading 3583, 3563, excuse me, B10 in its entirety makes clear that the period of custody can only be during the first year of supervision. Okay. I just wanted to be sure what your arguments were on that point. Look, let me turn to a slightly varied question. If we were to strike the custodial condition, but otherwise remand of the district court to conform the written judgment to the oral pronouncement, how long a term of supervised release could the court impose? Well, the court has already imposed a five-year term of supervised release for Mr. Lara. And because it unequivocally orally ruled to not revoke his supervision, he simply continues to serve the five-year term of supervision that was originally imposed. His supervision began, his first day of supervision was May 31st of 2019. And his one year of supervision concluded on May 31st of this year, 2020. And so my position is that the custodial condition of supervised release could not extend past May 31st of this year because it would then no longer be during his first year of supervision. Okay. If we strike the custodial condition, I guess what I'm wondering is, would the district court have the leeway to increase the term of supervised release? No, your honor. What this court should do is remand the district court to conform the written judgment to the oral pronouncement of sentence, which means that Mr. Lara will simply resume serving the five-year term of supervised release that began on May 31st, 2019. He'll have roughly four years remaining. I had a question that's not probably covered by the record, but is Mr. Lara still incarcerated? Yes, your honor. He's at the Victorville Penitentiary in California. Okay. Because I know that some folks have been, in effect, paroled is the wrong word, but released because of the COVID issue. He's not among them. No, your honor. I spoke to Mr. Lara last week and he remains in custody as far as I'm aware. Your honors, I'd like to turn back to 3563B10 and address some of the government's arguments for why this section does not apply to Mr. Lara's case. First, the government argues that 3563B10 does not apply to Mr. Lara's case because the district court did not clearly indicate that it to impose a term of intermittent confinement of which 3563B10 would permit under certain circumstances. Here, the problem with the government's argument that the district court record is unclear about whether 3563B10 applies is that the government has provided no citation, case, statute, or authority of any kind for how a district court could impose a term of custody as a condition of supervised release if 3563B10 does not apply. The government argues that the district court could have imposed up to two years in custody if it had revoked Mr. Lara's supervision, but all parties agree that that's not what happened. So the potential penalties for a revocation sentence do not justify the condition of supervised release here because we all agree that Mr. Lara's supervision was not revoked. See, that's why I asked before about what your argument is. Here's what I'd understood your argument to be. The district court simply lacks the power except under 3563B10 to impose a term of incarceration as a condition of supervised release unless it's revoked, obviously. And therefore, the entire term of incarceration was improperly imposed, not the term up through May 31. B10 would provide the leeway to do it through May 31 if it was an intermittent term of incarceration, right? Your Honor, my argument in the opening brief was that B10 permits a for nights, weekends, or quote, other intervals of time. Intermittent. What we've called intermittent incarceration. But that's not what the district court did here. The district court did not impose a term of intermittent incarceration. So it seems to me your position is that, is not that there was a term that was legally imposed that expired on May 31, but rather that the term shouldn't have been imposed at all. Your Honor, I've made both arguments in the briefs, and that's perhaps why the court is- I understand. It really doesn't matter since we're past May 31. Exactly. But you're not relying on B10 to say that the term was okay until May 31. Your argument is it shouldn't have been imposed at all. Your Honor, it certainly wasn't clearly imposed as a term of and so there's limited guidance about what type of sentence would conform to B10. The plain terms of the statute are broad. They include nights, weekends, or quote, other intervals of time. 10 months and 23 days is an interval of time. Okay, I see your point. And I guess it's moot at this point anyway. It is moot at this point anyway, because we're past May 31 of this year, meaning that Mr. Lara, if the court agrees with me, is currently serving a period of custody that he should not be. He should not be in jail today. Unless either of my colleagues have additional questions, your time has expired. I have one additional question that has nothing to do with this case. Where is the Ferris wheel and the picture behind you located? It's from the World's Fair in Chicago in the late 1800s. 18-whatever it was, yeah? Correct. Okay, thank you for that important clarification. Okay, so now we'll hear from Mr. I guess it's Rahe. I'm not sure how to say it. I apologize. You did well, your honor. Mark Rahe for the United States. Can you hear me? Yes, we can. Excellent. Your honor, the government's position in this case is that we're on, I mean, the defense argument has kind of changed. In the beginning, there was no argument at all that the district court lacked authority to impose custody for modification. The only argument was that the term violated B-10. And then when we said no, B-10 doesn't apply because this is not intermittent confinement. The intermittent confinement statute says nights, weekends, or other intervals of time under the well-settled rule of statutory construction. I think it's called the just in generis, you know, you read the last clause consistent with the first two. So our position was simply, well, if you're going to say this violates B-10, B-10 doesn't apply. Let's assume I agree with you. Let's assume that this wasn't a B-10 imposition, because that's what I was asking Mr. Stitt at the end of his argument. Under what authority can a district judge who has not revoked supervised release impose a term of incarceration as a condition of supervised, further supervised release? Your honor, we would say under what I will call the catch-all clause of 3583-D, because under E-2, which is what the parties agree we're on, this is a modification. It says on modification, a district court can impose conditions as if it were consistent with the principles that apply in the first instance. That's 3583-D. 3583-D says a judge may order any condition in 3563-B, but then it doesn't stop there. It goes on to say, in any other condition it considers to be appropriate. And we know that when Congress uses the word any, that typically displays a broad intent. What it also tells us then is that under that catch-all clause, the B enumerated theories are not the only universal conditions. And on top of that, the plain language of E-2 itself says that a district court may enlarge the conditions. And another point I'd point out, your honor... Stop for a second. I understand a district court can enlarge the existing conditions, but none of the existing conditions involve incarceration. So let's go back to 30... Why do you think that... Because we've had a lot of case law that says the purpose of supervised release is to rehabilitate and not to incarcerate. So trying to find a case somewhere, not just your interpretation of the statute, that the district court has the power to do. Do you have a case? You know, not in as many words, your honor. And of course, I'd point out that this should be on plain error review. I feel like that would be incumbent on the defendant. But I do have a case, United States versus Ramirez. That's a 347-F3-792 out of 2003, where this court recognized that there are some parole modifications that have temporary periods of confinement for violations of parole that are not considered revocation. And, you know, what that case, Ramirez, recognizes... Those were... I've read Ramirez, but those were temporary confinement, not a term of confinement of, what, does it have to be 18 months or some number like that. Is there another case that... I just can't find a case that says you can, as a term of supervised release, impose a term of incarceration. Is there a case? I have not found one, your honor. But I would say that on that record, then, I mean, that just means that the state of the law is unclear. Congress knows, even if we don't have a term of supervision when it wants to. And I would point the court to 18 U.S.C. 3561-A3. That governs probation. There, Congress said, you cannot impose probation at custody at the same time. And this court reaffirmed as much in a case called Forbes 172-F3-675 in 1999. From that, I would argue, Congress knows how to prohibit custody as a term of probation, and it did so. The fact that here we are 21 years later, there is no parallel provision governing supervised release, we would say, at least leaves the state of the law unclear, such that you cannot call what the district court did plain error, which is so obvious and so controlled by, you know, controlling authority that any competent district judge you know, should be allowed to avoid it without benefit of objection. Well, what do you do with the Bahi case? Yes, the Bahi case, I re-read it again last night. It does have language in there. It didn't italicize the language. It says, conditions of supervised release may not require it. Well, but first of all, that's dicta, your honor, because incarceration wasn't an issue. Second of all, Bahi cites 3583-D, if we're looking at the same sentence, and you know, 3583-D, all of us here have looked at it now many times, and there's nothing clearly against it. And the last thing I'd point out about Bahi is that Bahi's, you know, Bahi, at the time it was imposed, or at the time it came down, a court could not even impose intermittent confinement. And that's how Judge Preterson claimed his opinion. He has several paragraphs saying, intermittent confinement is punitive and therefore not rehabilitative. Congress dealt with that. I'm sorry. Congress dealt with that by changing the statute. Exactly. And which tells me that's Congress saying, no, you know, Bahi thought intermittent confinement was punitive and could never be imposed. And then eight years later, Congress changed the law and said, no, you can't impose intermittent confinement. Well, Congress didn't change. I'm sorry, part of the problem with this video stuff is we're going to talk over each other. So finish what you were saying. Oh, I'm saying, you know, the fact that Congress directly allows for intermittent confinement as a condition of supervised release, certainly tapped out on a large part of Bahi, which claimed that that was, you know, punitive and would never jive with the supervised release scheme. And I guess I was going to say, I read the legislative history differently. Bahi says, you can't even give intermittent confinement. And Congress says, no, you ought to be able to give intermittent confinement. But Congress doesn't at that point, say, but straight out incarceration is okay. So whatever, you know, we always have this mystery about one Congress speaking for another one. But at least the problem that Congress set out to solve was only intermittent confinement, not straight out incarceration, right? Right. But, you know, intermittent confinement, that's a benefit for a defendant, you know, who wouldn't want to just go on nights and weekends. So that's a benefit. And I think when they amended it, they wanted to say, you know, you can only do it in the first year supervised release in a suit in a suitable facilities are available. But again, even if Congress only addressed intermittent confinement with that amendment, that still only talks about the B 3563 B universe of conditions, Congress did not change 3583 D, which says that a court can set any discretionary condition within that B 3563 B universe and any other condition it considers to be appropriate. And at the very least, if you know, if all of us discussing in here can't see there's a clear cut solution, the government would or a clear cut answer, the government would simply posit that on plain error review, which incidentally definitely applies. Defense case by he itself says that that argument, a similar argument was raised for the first time there, we review it for plain error. The first column requires an error so plain, so obvious, that it's outside the realm of, you know, understanding and we would submit on this record that cannot be said. Does it make a difference to your argument that bodies and on a unanimous on bonk decision of this court? It's not. One thing to say that it's technically dictum, but it's it's language that nine judges of this rule clear. Your Honor, respectfully, I'm looking at body and I don't see this on bonk. It says Traversing Wiggins and Carter. I think that was just a panel decision. Well, I'm looking at the on bonk. Oh, I'm sorry. You're right. I'm looking at the denial of on bonk. You're correct. You're correct. I'm sorry. I'm not so sure that that language is dictum, but in any event, well, if the court says, you know, conditions of supervisory may not involve punishment or incarceration, I'm looking at pages 1130 to 1131 of body. There were no, there were no conditions of incarceration at issue in body. I'd say that that has to make a dictum because the court goes on. All they end up talking about is community confinement. And then they compare that to intermittent confinement. But I mean, certainly when the body opinion goes on to say, intermittent confinement is a form of custody, and therefore it is categorically foreboding as a condition. We know eight years later, Congress basically said that was an incorrect interpretation. Now, the Congress didn't say it was an incorrect interpretation. When Congress passes a new law, it doesn't say that the in the past, it may solve a problem. Congress doesn't get to overrule the interpretation of the court. It just says, all right, maybe intermittent incarceration isn't allowed. We're not going to solve that. We're going to allow it. I can't treat an act of Congress eight years later after a decision as overruling a decision. It just changes the law. Well, fair enough, Your Honor. Do either of my colleagues have additional questions for Mr. Rahe? We're over our time. Either of you can ask additional questions if you like. I have none, Judge. How about you? I don't. All right. So thank you, Mr. Rahe, for your argument. Do you have any questions for Mr. Stitt? We've got over his time as well. I do not. I do not either. Okay. Well, we thank both counsel for their argument in this case. It's been very helpful. The case of United States v. Lara is submitted. Your Honor, before leaving, may I make one very brief request? You can make a request, sure. If the court agrees with my position, my request would be that the court issue its opinion and mandate forthwith since Mr. Lara continues to be incarcerated. Thank you. Thank you. Okay. Very well. So we go on now to the case of Zimmerman v. Baca.
judges: M. Smith, Jr., Hurwitz, Ezra